UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELSA O.,[1]<br><br>    *Plaintiff*,<br><br>    v.<br><br>LELAND DUDEK, ACTING COMMISSIONER OF SOCIAL SECURITY,[2]<br><br>    *Defendant*. | No. 3:24cv518(MPS) |

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

The Plaintiff has filed an administrative appeal under 42 U.S.C. § 405(g) against the Commissioner of Social Security, challenging the denial of her application for Supplemental Security Income benefits. She argues that the decision should be reversed because the Administrative Law Judge ("ALJ") erred at Step 2 in finding that she had no severe impairments. ECF No. 17. The Commissioner has filed a motion to affirm the ALJ's decision. ECF No. 19. For the reasons that follow, I grant the Plaintiff's motion and remand the case to the Commissioner.

I assume familiarity with the Plaintiff's medical history. I also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[3] I cite only those portions of the record and the legal standards necessary to explain this ruling.

**I.    Standard of Review**

The Court may vacate the agency's disability determination only if it is based on legal error

---

[1] As set forth in the Court's January 8, 2021 Standing Order, the Plaintiff is identified by her first name and last initial, or as "the Plaintiff." See Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).
[2] Leland Dudek is the Acting Commissioner of the Social Security Administration. Under Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted as the defendant in this action.
[3] Citations to the administrative record, ECF No. 12, appear as "R." followed by the page number appearing in the bottom right-hand corner of the record.

or unsupported by substantial evidence. *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).

> The substantial evidence standard is a very deferential standard of review - even more so than the clearly erroneous standard.... Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.... If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.... The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.

*Id.* at 74 (internal quotation marks and citations omitted).

## II. Step 2 of the Disability Evaluation

At Step 2, the ALJ determines whether a claimant has medically determinable impairments, and, if so, whether such impairments are "severe." 20 C.F.R. § 416.920(c).[4] A medically determinable impairment is considered "severe" if it significantly limits a claimant's ability to do work-related activities.[5] *Id.* Basic work activities include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.922(b).

"A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work

---

[4] If a claimant does not have a severe impairment, he or she is not disabled. *Id.*

[5] "[T]he question of whether an impairment is severe - whether it 'significantly limits' a claimant's ability to perform basic work activities - is an entirely different question than whether a claimant is suffering from a qualifying 'disability' within the meaning of the Act." *Melendez v. Colvin*, 2015 WL 5512809, at *4 (N.D.N.Y. Sept. 16, 2015). "[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling[.]" *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

activities." SSR 85-28, 1985 WL 56856, at *3. "[T]he standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). "For an ALJ to stop at step two and not continue to the remaining steps is 'an unusual case.'" *Ruth H-Z. v. Comm'r of Soc. Sec.*, 2022 WL 2586533, at *4 (W.D.N.Y. July 8, 2022) (quoting *Dawn Lyn C. v. Comm'r of Soc. Sec.*, 2021 WL 4398372, at *1 (D. Conn. Sept. 27, 2021)). Indeed, SSA regulations caution that "[g]reat care should be exercised in applying the not severe impairment concept" and instruct that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." SSR 85-28, 1985 WL 56856, at *4.

### III.   The ALJ's Step 2 Decision

The ALJ determined that the Plaintiff suffered from medically determinable impairments of obesity, diabetes mellitus, hypertension, status post wrist fracture, lower extremity paresthesia, right internal carotid, asthma, hyperlipidemia, abnormal EKG, varicose veins, and depressive disorder. R. 26, 27. The ALJ next considered the Plaintiff's subjective complaints.

**Plaintiff's Subjective Complaints**

The Plaintiff stated that as a result of her uncontrolled diabetes, she gets dizzy due to fluctuations in her blood sugar. R. 416; R. 481 ("I experience low sugars, dizziness, shakes, and weakness.") See also R. 485 ("I experience high + low blood sugars which cause me to have dizzy spells.") She used to watch a child in her home but her "low blood sugar… did not allow [her] to continue" to do so. R. 45. She was afraid she would faint. R. 46. She explained that her diabetes "doesn't allow me to do house things, what I need to do during the day, because I suffer from a lot

of dizziness. My blood level -- my blood sugar level goes up and down frequently, a lot. It goes up and down." R. 48.

The Plaintiff also indicated that she experiences pain. R. 416. She also suffers from stomach aches, loss of sleep and loss of appetite. *Id.* R. 423 (noting that she takes more than ten medications a day, including insulin, and suffers from stomach aches, loss of sleep, loss of appetite, constipation, and dizziness but doesn't know which medications cause her side effects). Her symptoms have affected her ability to perform household chores. R. 482 ("Before I had more ability to take care of my household needs, I was taking care of my husband, now it is reverse[d]- he takes care of me.")

The ALJ found that while the Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision." R. 27. Accordingly, he concluded that none of the Plaintiff's impairments, singularly or in combination, were severe and therefore the Plaintiff was not disabled within the meaning of the Social Security Act from March 24, 2021 through January 20, 2023, the date of the decision. R. 29.

**IV.     Discussion**

The Plaintiff argues that the ALJ did not provide sufficient specific reasons for discounting her complaints about pain. ECF No. 17-1 at 31. I agree.

**Evaluation of Symptoms**

Social Security "regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that

4

could reasonably be expected to produce the symptoms alleged." *Id.* If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record." *Id.* The ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3P, 2017 WL 5180304, at *4. The factors that an ALJ should consider in evaluating the claimant's subjective complaints are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the claimant's pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of the claimant's pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

When finding that a claimant's testimony is not entirely credible, the ALJ "must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence." *Jeffery Z. v. Kijakazi*, 2023 WL 8115041, at *17 (D. Conn. Feb. 21, 2023). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the

individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *10. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (an ALJ need not "discuss all seven factors" if he "thoroughly explain[s] his credibility determination and the record evidence permits [a court] to glean the rationale of the ALJ's decision.")

**ALJ's Evaluation**

In his decision to discount the Plaintiff's complaints about the severity of her physical symptoms, the ALJ cited (1) records about the Plaintiff's right thumb; (2) that the Plaintiff reported "variable blood glucose levels and bilateral leg pain" at various visits in 2021 but that in December 2021, "she [was] showing improvements including demonstrating excellent glycemic control" and that physical examinations "continued to relay normal neurologic strength and sensation"; (3) a September 2021 report that the Plaintiff reported "bilateral leg pain" but on exam, had a negative straight leg test and "no lower extremity weakness or change in sensation;" (4) a March 2022 medical note that "she is able to walk most days;" (5) a May 2022 note that her blood sugar level had been in the target range 63% of the time and out of range 37% of the time; and (6) a report reflecting unremarkable cardiovascular testing. R. 27-28. The ALJ also cited a function report, stating that the report indicated that the Plaintiff "is able to perform activities of daily living independently, such as prepare meals, maintain personal hygiene, socialize with family, and go shopping for food." R. 27. Additionally, the ALJ observed that the Plaintiff had "sun exposure from a cruise" and had started "caring for children" in September 2022. R. 28.[6] From this, the ALJ determined that "the conclusion that the claimant does not have an impairment or combination of impairments that significantly limits her ability to perform basic work activities is consistent with the objective medical evidence and other evidence." R. 28.

---

[6] The ALJ also discussed records concerning the Plaintiff's mental health and obesity, R. 28, but that discussion is not relevant to the issues presented.

6

The ALJ failed to make adequate findings and cite specific reasons explaining his decision. The record contains ample reports of the Plaintiff's complaints of pain, which the ALJ failed to address. *See, e.g.*, R. 1044, 4/7/21 noting peripheral neuropathy; R. 1123, 7/19/21 record stating bilateral leg pain; R. 1080, 9/21/21 noting Plaintiff's report of neuropathic pain in right leg; R. 1069, 10/5/21 note that Plaintiff's ability to exercise was limited by sciatica and body aches and R. 1070, that she complained of intermittent tingling in the legs with "persistent sciatica in her right leg;" R. 1691, 1/27/22 note that Plaintiff seen for right leg/hip pain; R. 1676, 2/11/22 note that Plaintiff presented with low back pain and "difficulty ambulating"; R. 1670, 2/21/22 "worsening sciatica"; R. 1598, 6/16/22 note that Plaintiff reported low back pain; R. 1457, 11/3/22 note that she reported pain down her right leg. The record also indicates that she was seen at the ER for low back pain. R. 1691, 1/27/22 presenting with "recurring right leg/hip pain," diagnosis of sciatica; R. 1676, 2/11/22 presents with back pain. Further, although the ALJ cited a singular finding of negative straight leg raising, the record contains multiple records of positive straight leg raising that the ALJ did not address. See R. 1691, 1/27/22; R. 1909, 2/15/22; R. 1670, 2/21/22; R. 1598, 6/16/22.

Nor did the ALJ mention the Plaintiff's myelogram which "shows degenerative changes with mild canal stenosis and neural foraminal narrowing at L4/5 and right foraminal narrowing at L5/S1 *which correlates with her radicular pain*." R. 1626, 6/6/22 note (emphasis added). Because the ALJ did not address these clinical findings, the Court is unable to discern from the ALJ's decision how he concluded that they were inconsistent with the Plaintiff's testimony regarding pain.

The ALJ also did not address aggravating factors for the Plaintiff's symptoms. R. 1506, 8/15/22 note that "pain aggravators" include "sitting too long, standing too long, laundry, dishes,

7

food prep. Has to wash dishes sitting down. Mopping standing straight causes LBP. She leans to one side to avoid pain."

The ALJ's discussion was silent as to treatment. R. 1593-94, 7/12/22 note that the Plaintiff underwent physical therapy to address her low back pain. Physical therapy notes indicate that the Plaintiff had some degree of functional limitation. See R. 1461, PT note that Plaintiff's goals included being "able to tolerate ambulation for > 10 minutes or 1/4 mile without increased [lower back pain]" and being "able to stand for 30 minutes without increased symptoms, so that she can perform household chores (dishes laundry)." The ALJ also neglected to discuss the Plaintiff's pain medication. R. 1083, 9/21/21 prescribing gabapentin 100 mg 3 times daily for neuropathic pain and considering "uptitration"; R. 1441, 11/28/22, reflecting increased dosage of gabapentin to 600 mg 3 times daily; R. 1514, 8/23/22 naproxen 375 mg as needed; R. 1676, 2/11/22 note prescribing robaxin.

The ALJ did discuss the Plaintiff's activities of daily living, but his discussion failed to offer a sufficient explanation of how the Plaintiff's daily activities undermined her complaints of pain, especially at the Step 2 level. The ALJ pointed to a function report as evidence that she could "perform activities of daily living independently." R. 27. But his characterization of the Plaintiff's abilities did not convey a complete picture of what she stated. The Plaintiff did state that she was able to make herself meals but explained that "[i]t has become difficult to stand to prepare food" and that "[s]ometimes I prepare *complete* meals with my husband's support" suggesting that the food she prepared on her own was not a "complete meal." R. 483 (emphasis added). She explained that while she does some household chores, it "takes all day and sometimes [she] is unable to finish." *Id.* See also R. 1459, 11/3/22 note that she "need[s] to take breaks between chores - Can't do everything in a row." The Plaintiff stated that her "husband helps [her] all the time." R. 483.

8

The ALJ also cited a March 2022 note that the Plaintiff was "able to walk most days." R. 27. It is unclear how this statement - which seems to suggest that the Plaintiff had some degree of functional limitation - supports the ALJ's decision to discount the Plaintiff's complaints, again, especially at the Step Two level.[7]

The ALJ also observed that the Plaintiff went on a vacation. R. 28. But he did not explain how the Plaintiff's vacation undermined her reported symptoms, especially in light of the Plaintiff's report that she just "relaxed" on the cruise. R. 1493. The ALJ noted that the Plaintiff was "working at a daycare, caring for children for a donation." R. 28. The record, however, also indicates that "she does not lift the children." R. 1506. As to her earlier work of watching a toddler in her home, she was able to change diapers and feed him but her "husband care[d] for him." R. 417.

After careful review of the record and the ALJ's decision, I find that the ALJ failed to sufficiently explain his reasoning in a way that permits me to glean the basis for his credibility determination and so this matter must be remanded for further proceedings.

**Diabetes**

The ALJ's decision also failed to set forth specific findings explaining his decision to discount the Plaintiff's complaints arising from her diabetes. The record is replete with references to the Plaintiff's "uncontrolled" diabetes and the symptoms she experienced as a result. Indeed, the ALJ observed that in May 2022 that the Plaintiff's blood sugar level was out of range almost 40% of the time. R. 27. He did not, however, explain how this fact supported his decision to discount the Plaintiff's subjective complaints. The ALJ also cited a December 2021 record that

---

[7] The record contains additional evidence that the Plaintiff experienced difficulty walking due to pain. R. 1123, 7/19/21 note that "She has some bilateral leg pain with walking long distances."; R. 1069, 10/5/21 note "walking limited by sciatica."

9

the Plaintiff demonstrated "excellent glycemic control," but the ALJ fails to account for the significant objective medical evidence to the contrary that supports and is consistent with her symptomatology. See R. 1152, 4/7/21 note stating Plaintiff suffered from "uncontrolled" diabetes mellitus; R. 1154, "positive for polydipsia, polyphagia and polyuria"; R. 1065, 4/7/21 note that her A1C was 10.8[8]; R. 1126, 7/19/21 note that Plaintiff has "uncontrolled type 2 diabetes mellitus" with hyperglycemia, R. 1124, positive for polydipsia, polyphagia and polyuria; R. 1065, 8/17/21 test result showing her A1C was 11.1; R. 1082-3, 9/21/21 note, positive for polyuria and polydipsia, increased insulin and lipid-lowering medication and should be "follow[ed] closely for hypoglycemic events"; R. 1877, 10/5/21 note stating "60 yo F with poorly controlled DM II, worse in the last year with more volatile blood glucose levels," symptoms/problems include hyperglycemia, hypoglycemia, nausea, polydipsia, polyuria and decreased appetite, blood sugar records indicate readings in the evening as high as >500, otherwise around 250s/300s. Has had morning glucose as low as 64 with symptoms (nausea, light-headedness, fatigue)"; R. 1887, 10/21/21 note stating diagnosis of "Uncontrolled type 2 diabetes mellitus with hyperglycemia" and that insulin was adjusted; R. 1715, 11/16/21 note that A1c was 10.4% on 10/5/21, that Plaintiff had "hypoglycemic episode that morning with symptoms of dizziness, sweats, and tremors"; R. 1919, 3/11/22 note that Plaintiff's A1c was 8.5 and fasting blood sugar was 49[9]; R. 1646, 4/12/22 note that "In the past 2 weeks BS has been in target range 69% of the time, high/very high 29% of the time and low 2% of the time. She has had a significant number of low BS readings"; R. 1941, 5/19/22 note "In the past 2 weeks BS has been in target range 63% of the time, [and] high/very

---

[8] For most adults living with diabetes, an A1C level of less than 7% is a common treatment target. https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643
[9] "For most people with diabetes, hypoglycemia is when your blood sugar level is below 70 milligrams per deciliter (mg/dL) or 3.9 millimoles per liter (mmol/L)."  https://my.clevelandclinic.org/health/diseases/11647-hypoglycemia-low-blood-sugar

10

high 37% of the time"; R. 1612, 6/16/22 note that "today['s] fasting glucose was 71 and she was feeling shaky and anxious, had a tremor, resolved after carbohydrate intake"; R. 1610, 6/28/22 note that for prior 2 weeks Plaintiff's glucose readings have "been in target range 51% of the time, high/very high 49% of the time"; R. 1512, 8/25/22 note "Presents not feeling well, states has been experiencing low sugars."

In light of the record and the low hurdle at Step 2, it is difficult to see how the ALJ could have concluded that the Plaintiff's diabetes was so *de minimis* as to be non-severe, since her symptoms, even if partially credited, would seem to substantiate something more than "minimal limitations" on her ability to carry out work-related activities.  But the Court cannot determine if the ALJ's conclusion is supported by substantial evidence in the record without a more fulsome explanation of why the ALJ found the Plaintiff's complaints not credible.  Accordingly, the case is remanded for further proceedings.[10]

## V.  Conclusion

For these reasons, the Plaintiff's motion, ECF No. 17, is GRANTED and the Commissioner's motion, ECF No. 19, is DENIED.  The case is hereby REMANDED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
April 2, 2025

---

[10] Accordingly, I need not address the Plaintiff's other arguments.